IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **MARY GOSS** | : | **Civil No. 1:12-CV-1349** |
| | : | |
| **Plaintiff,** | : | |
| | : | **(Chief Judge Conner)** |
| **v.** | : | |
| | : | **(Magistrate Judge Carlson)** |
| **MICHAEL J. ASTRUE** | : | |
| **Commissioner of Social Security** | : | |
| | : | |
| **Defendant.** | : | |

## REPORT AND RECOMMENDATION

### I.   Introduction

In this case we are asked to consider whether substantial evidence supports an ALJ's decision denying benefits to the plaintiff, when that application for benefits was largely premised on disabilities affecting the plaintiff's *right* arm, but the ALJ's decision denying her application discussed the plaintiff's strength and range of motion in her *left* arm.  Finding that this, and other, errors lead us to conclude that this decision is not supported by substantial evidence, we recommend that this case be remanded for further consideration by the Commissioner.

The plaintiff, Mary Goss, appeals from an adverse decision denying her Title XVI application for supplemental security income (SSI).  This application was denied

in a May 12, 2010, hearing before an Administrative Law Judge (ALJ), (Tr. 33-56), and in a written decision dated September 21, 2010. (Tr. 10-18). The record of these social security proceedings reveals that the plaintiff applied for SSI in August 2008 alleging an onset date of June 1, 2005, due to: pain in her right shoulder from a prior work injury; obesity; degenerative disc disease of the cervical spine; rheumatoid arthritis; migraine headaches; and psoriasis.[1] (Tr. 10). The plaintiff sought, and was denied, review by the Appeals Council. (Tr. 1-6, 80-82).

On July 12, 2012, the Plaintiff, though her counsel, filed a complaint appealing the final decision denying her application for SSI. (Doc. 1) The jurisdiction of this court is invoked pursuant to 42 U.S.C. §1383(c)(3).[2] On September 17, 2012, Defendant filed an answer to the Plaintiff's complaint, together with a copy of the administrative record. (Docs. 7, 8) On October 15, 2012, the Plaintiff filed her brief. (Doc. 9) On November 16, 2012, the Commissioner filed a brief. (Doc. 10) This

---

[1] The Plaintiff applied for, and was denied, benefits on two prior occasions. The Plaintiff's first application for benefits was denied by ALJ Jasper Bede on August 6, 1997. Her second application for benefits was denied by ALJ Joseph Leary on January 16, 2002. The record does not reveal any evidence that the Plaintiff pursued either application beyond the ALJ hearing. (Tr. 10).

[2] "The final determination of the Commissioner of Social Security after a hearing under paragraph (1) shall be subject to judicial review as provided in section 405(g) of this title to the same extent as the Commissioner's final determinations under section 405 of this title." 42 U.S.C. §1383(c)(3).

appeal is now ripe for disposition.[3]

For the reasons that follow, it is recommended that the decision of the Commissioner be remanded.

## II.    Statement of Facts and of the Case

The Plaintiff, born on December 18, 1961,[4] has not worked since she injured her right shoulder lifting a patient while working as a nurse's aid in 1987.  The Plaintiff testified that she has a high school education, and is able to read and write the English language and do basic math.  (Tr. 41-42).  After graduating from high school, the Plaintiff completed some college course work towards a nursing degree.  (Tr. 42).  In a document she filed with the Social Security Administration, the Plaintiff reported that she previously worked as a nurse's aid, and food preparer at a fast food restaurant.[5]  (Tr. 106-113).  The Plaintiff is right-handed.  (Tr. 41).

---

[3]Under the Local Rules of Court, "[a] civil action brought to review a decision of the Social Security Administration denying a claim for social security disability benefits" is "adjudicated as an appeal."  L.R. 83.40.1

[4]On the date the ALJ's decision, the Plaintiff was 48 years of age.  Under the Social Security Regulations, a person under age 50 is considered a younger individual.  20 C.F.R. §416.963.

[5]Because the Plaintiff had not worked in the past fifteen years, the ALJ found that the Plaintiff's past employment was not relevant to her analysis.  Past relevant employment in the present case means work performed by the Plaintiff during the 15 years prior to the date her claim was adjudicated by the Commissioner.  20 C.F.R. §§ 416.960, and 416.965.

Following her shoulder injury, the Plaintiff sought treatment from Albert Janerich, M.D. (Tr. 141). In his April 11, 2007, treatment notes, Dr. Janerich observed that the Plaintiff's condition was unchanged compared to a prior examination in October 2006. Id. He noted that, overall, the Plaintiff was "40% of normal" and "at times" had "some right upper extremity radicular pain." Id. On examination, he noted that the Plaintiff's neck showed paracervical and trapezial spasm, some limitation in cervical range of motion in all planes, but observed that she appeared comfortable at the time. Id.

Seven months later, the Plaintiff returned to Dr. Janerich when she experienced a "flare effecting her upper right quarter." (Tr. 142). On examination, he noted that there was focal tenderness in the region of the right shoulder joint proper, in addition to identifying one myofascial trigger point in the region of the right upper trapezius. Id. Dr. Janerich treated the Plaintiff with Kenalog and Xylocaine injections. Id. In May 2008, still convalescing as a result of right upper quarter pain, the Plaintiff returned to Dr. Janerich with complaints of increasing pain. (Tr. 143). On examination, Dr. Janerich identified two myofascial trigger points in the right upper quarter: one in the trapezius; and the other in the levator scapulae. Id. Once again, Dr. Janerich treated the Plaintiff with Kenalog and Xylocaine injections, and prescribed Lunesta, a sleep aid. Id.

4

In November 2008, Toni Parmelee, D.O. conducted a consultative examination. (Tr. 155-63).  During her neurological examination, Dr. Parmelee noted that the Plaintiff had decreased strength in her upper right extremities.  Id.  Dr. Parmelee also noted that the Plaintiff had edema and erythema[6] in her right hand and forearm, and diminished sensation to light touch and two point discrimination over both the dorsum and palmar surfaces of her right hand.  Id.

On the same day, Dr. Parmelee completed an RFC assessment.  (Tr. 153-54). She opined that the Plaintiff had the RFC to:  frequently lift or carry up to ten pounds, and occasionally lift or carry twenty pounds; sit for 8-hours per workday with a sit/stand option, and stand for one hour per 8-hour workday; occasionally bend; and, never kneel, stoop, crouch, balance, or climb.  Id.  Dr. Parmelee also opined that the Plaintiff was limited in the use of her upper right extremity which affected her abilities to reach, handle, finger, and feel with her dominant hand and arm.  Id.

On November 21, 2008, a state agency reviewer, Gary C. Tilley, completed a physical RFC assessment.  (Tr. 169-175).  Mr. Tilley opined that the Plaintiff had the RFC to:  frequently lift or carry up to ten pounds, and occasionally lift or carry twenty pounds; sit for six hours per 8-hour workday, and stand for six hours per 8-hour

---

[6]Erythema is defined as "redness of the skin produced by congestion of the capillaries."  See Dorland's Illustrated Medical Dictionary 643 (32nd ed. 2012).

workday; occasionally climb ramps or stairs, balance, stoop, kneel, and crouch; and, never crawl. Id. Dr. Tilley also opined that the Plaintiff was limited in her ability to push and pull with her upper extremities, and was limited in her ability to reach, handle, and feel with her right (dominant) hand. Id.

The Plaintiff returned to Dr. Janerich in July 2009, and March 2010 with complaints of chronic neck pain and right trapezius discomfort. (Tr. 180, 193). During both visits, Dr. Janerich observed that the Plaintiff had some restricted range of motion in her cervical spine, and tenderness over the right trapezius. Id. Despite this pain, the Plaintiff appeared to be in no acute distress, ambulated without assistance, and was able to sit and stand without assistance. Id.

On May 12, 2010, with the assistance of counsel, the Plaintiff appeared and testified at a hearing before the ALJ. (Tr. 35-51). At the hearing, the Plaintiff testified that she had difficulty with some personal care tasks, such as washing her hair, due to the limited range of motion in her right upper extremity. (Tr. 43). She indicated that her sleep was interrupted by pain each time she moved. (Tr. 45-46). The Plaintiff also testified that she could sit for 45 minutes to an hour before she needed to stand in order to alleviate her discomfort, and could walk for two to three blocks before she needed a break. (Tr. 46). She indicated that she took Percocet for her shoulder pain, but asserted that she had recently inquired about a dosage increase

because it was not working as well as it used to; she also admitted that stretching by putting pressure on her shoulder against a wall sometimes helped alleviate her pain. (Tr. 47, 50).  The Plaintiff also testified that her symptoms were aggravated by repetitive motion with her right arm, and by extreme cold; she asserted that her right hand "locks up" twice per day and turns black and blue without any discernable trigger.  (Tr. 48).

After noting that the administrative record lacked any imaging evidence the ALJ scheduled an additional consultative examination, with an x-ray, to take place after the hearing.  (Tr. 37).  An MRI from May 2010 revealed:  straightening of the cervical lordosis, which was potentially attributed to muscular spasm; tiny focal midline disc herniation at C3-C4, and, to a lesser degree, at C2-C3;  small focal left paramedian disc herniation at C4-C5; moderate disc degeneration with mild to moderate disc protrusion and potential shallow herniation at C5-C6; mild disc bulging eccentric to the left side at C6-C7.  (Tr. 213-214).  There was, however, no evidence of fracture, dislocation, marrow replacing process, or cervical cord abnormality.  Id. An EMG from June 2010 revealed radiculopathy at C5-C6 on the Plaintiff's right side.  (Tr. 194).

On June 24, 2010, Kamlesh Patel, M.D. conducted a consultative examination. (Tr. 199-202).  Dr. Patel's examination notes reveal that the Plaintiff had a decreased

7

range of motion in her right shoulder when compared to her left.  Id.  Dr. Patel also

noted that the Plaintiff had normal sensation on both sides, and 5/5 muscle strength

in her upper and lower extremities, bilaterally.  Id.

## II.   Discussion

In her decision, the ALJ went through each step of the five-step sequential

evaluation process and found:  (1) the Plaintiff had not engaged in substantial gainful

activity since July 31, 2008, (Tr. 12); (2) the Plaintiff's alleged impairment due to

"status-post tight shoulder injury/reflex sympathetic dystrophy, obesity and

degenerative disc disease of the cervical spine" were severe, Id.; (3) the Plaintiff did

not have an impairment, or combination of impairments, that met or medically

equaled a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1, (Tr. 13);

(4) the Plaintiff had no past relevant work, (Tr. 17); and (5) the Plaintiff could

perform a limited range of light work.[7]   (Tr. 17-18).  In support of her findings, the

---

[7]The ALJ found that the Plaintiff had the RFC to perform a "narrow range" of
light work as defined by the Social Security Regulations, except that she was able to:
stand or walk for two hours per 8-hour workday, and sit for six hours per 8-hour
workday; occasionally balance, climb stairs or ramps, and stoop; never climb ladders,
ropes or scaffolds, kneel, crouch, or crawl.  (Tr. 13).  The ALJ also found that the
Plaintiff was limited in her ability to reach overhead or push and pull with her upper-
right extremity, and must avoid exposure to hazards, such as moving machinery and
heights, humidity, temperature extremes, and vibration.  Id.

Light work is defined as work which involves "lifting no more than 20 pounds at a
time with frequent lifting or carrying of objects weighing up to 10 pounds. Even

ALJ found that the Plaintiff's subjective complaints of pain lacked credibility, and rejected the medical opinions of Dr. Parmelee and state agency reviewer Mr. Tilley. (Tr. 13-17).

In her brief, the Plaintiff argues that the ALJ's decision is unsupported by substantial evidence due to an improper assessment of the Plaintiff's subjective complaints of pain, as well as due to her failure to accord sufficient weight to the medical opinions by a non-treating source, Dr. Parmelee, and a non-examining source, Mr. Tilley.[8]

---

though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. §416.967(b).

[8]There is no opinion by a treating source in the administrative record. There are, however, treatment notes and records from the Plaintiff's treating pain management specialist, Dr. Janerich.

A.   **Standards of Review–The Roles of the Administrative Law Judge and This Court**

    1.   **Initial Burdens of Proof , Persuasion and Articulation for the ALJ**

Resolution of the instant social security appeal involves an informed consideration of the respective roles of two adjudicators–the administrative law judge (ALJ) and this Court.   At the outset, it is the responsibility of the ALJ in the first instance to determine whether a claimant has met the statutory prerequisites for entitlement to benefits.   To receive benefits, a claimant must present evidence which demonstrates that the claimant has an inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."   42 U.S.C. § 1382c(a)(3)(A).

Furthermore,

> An individual shall be determined to be under a disability only if [her] physical or mental impairment or impairments are of such severity that [she] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which [she] lives, or whether a specific job vacancy exists for [her], or whether [she] would be hired if [she] applied for work.   For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists in significant

numbers either in the region where such individual lives or in several regions of the country.

42 U.S.C. § 1383c(a)(3)(B).

In making this determination the ALJ employs a five-step evaluation process to determine if a person is eligible for disability benefits. See 20 C.F.R. § 416.920. If the ALJ finds that a Plaintiff is disabled or not disabled at any point in the sequence, review does not proceed any further. See 20 C.F.R. § 416.920(a)(4). As part of this analysis the ALJ must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity;[9] (2) whether the claimant has a severe impairment;[10] (3) whether the claimant's impairment meets or equals a listed

---

[9] Substantial gainful activity is work that "involves doing significant and productive physical or mental duties" and "is done (or intended) for pay or profit." 20 C.F.R. §416.910.

[10] The determination of whether a claimant has any severe impairments at step two of the sequential evaluation process is a threshold test. 20 C.F.R. §416.920(c). If a claimant has no impairment or combination of impairments which significantly limits the claimant's physical or mental abilities to perform basic work activities, the claimant is "not disabled" and the evaluation process ends at step two. Id. If a claimant has any severe impairments, the evaluation process continues. 20 C.F.R. §416.920(d)-(e). Furthermore, all medically determinable impairments, severe and non-severe, are considered in the subsequent steps of the sequential evaluation process. 20 C.F.R. §§ 416.923, and 416.945(a)(2). An impairment significantly limits a claimant's physical or mental abilities when its effect on the claimant's ability to perform basic work activities is more than slight or minimal. Basic work activities include the ability to walk, stand, sit, lift, carry, push, reach, climb, crawl, and handle. 20 C.F.R. § 416.945(b). An individual's basic mental or non-exertional abilities

impairment;[11] (4) whether the claimant's impairment prevents the claimant from

doing past relevant work;[12] and (5) whether the claimant's impairment prevents the

claimant from doing any other work.  See 20 C.F.R. § 416.920.

Before completing step four of this process, the ALJ must also determine the

claimant's residual functional capacity (RFC).  20 C.F.R. § 416.920(e).  RFC is

defined as "that which an individual is still able to do despite the limitations caused

by his or her impairment(s)."  Burnett v. Comm. of SSA, 220 F.3d 112, 121 (3d Cir.

2000) (citations omitted); see also 22 C.F.R. §416.945; SSR 96-8p.  In making this

assessment, the ALJ considers all of the claimant's impairments, including any

medically determinable non-severe impairments.  22 C.F.R. §416.945(a)(2).

This disability determination involves shifting burdens of proof.  The initial

burden rests with the claimant to demonstrate that she is unable to engage in past

---

include the ability to understand, carry out and remember simple instructions, and
respond appropriately to supervision, coworkers, and work pressures.  20 C.F.R. §
416.945(c).

[11]If the claimant has an impairment or combination of impairments that meets
or equals a listed impairment, the claimant is disabled.  20 C.F.R. § 416.920(d).  If the
claimant does not have an impairment or combination of impairments that meets or
equals a listed impairment, the sequential evaluation proceeds to the next step.  20
C.F.R. § 416.920(e).

[12]If the claimant has the residual functional capacity to do her past relevant
work, the claimant is not disabled.  20 C.F.R. § 416.920(f).

relevant work.   If the claimant satisfies this burden, then the Commissioner must show that jobs exist in the national economy that a person with the claimant's abilities, age, education, and work experience can perform.  20 C.F.R. §§ 416.920(g), and 416.966-69; see also Mason v. Shalala, 994 F.2d 1058, 1064 (3d Cir. 1993).

The ALJ's disability determination must also meet certain basic procedural and substantive requisites. Most significant among these legal benchmarks is a requirement that the ALJ adequately explain the legal and factual basis for this disability determination.  Thus, in order to facilitate review of the decision under the substantial evidence standard, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests."  Cotter v. Harris, 642 F.2d 700, 704 (3d Cir. 1981).  Conflicts in the evidence must be resolved and the ALJ must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence.  Id. at 706-707.  In addition, "[t]he ALJ must indicate in his decision which evidence he has rejected and which he is relying on as the basis for his finding."  Schaudeck v. Com. of Soc. Sec., 181 F. 3d 429, 433 (3d Cir. 1999).

### 2.   Guidelines for Assessment of the Disabling Effect of Pain

Moreover, where a disability determination turns on an assessment of the level of a claimant's pain, the Social Security Regulations provide a framework under which a claimant's subjective complaints are to be considered.  20 C.F.R. § 416.929.

Such cases require the ALJ to "evaluate the intensity and persistence of the pain or symptom, and the extent to which it affects the individual's ability to work." Hartranft v. Apfel, 181 F.3d 358, 362 (3d Cir. 1999). Cases involving an assessment of subjective reports of pain "obviously require[ ]" the ALJ "to determine the extent to which a claimant is accurately stating the degree of pain or the extent to which he or she is disabled by it." Id.

The Social Security Regulations provide a framework under which a claimant's subjective complaints are to be considered. 20 C.F.R. § 416.929. Under these regulations, first, symptoms, such as pain, shortness of breath, and fatigue, will only be considered to affect a claimant's ability to perform work activities if such symptoms result from an underlying physical or mental impairment that has been demonstrated to exist by medical signs or laboratory findings. 20 C.F.R. § 416.929(b). Once a medically determinable impairment which results in such symptoms is found to exist, the Commissioner must evaluate the intensity and persistence of such symptoms to determine their impact on the claimant's ability to work. 20 C.F.R. § 416.929(b). In so doing, the medical evidence of record is considered along with the claimant's statements. 20 C.F.R. § 416.929(b). Social Security Ruling 96-7p gives the following instructions in evaluating the credibility of the claimant's statements regarding her symptoms:

14

> In general, the extent to which an individual's statements about symptoms can be relied upon as probative evidence in determining whether the individual is disabled depends on the credibility of the statements. In basic terms, the credibility of an individual's statements about pain or other symptoms and their functional effects is the degree to which the statements can be believed and accepted as true. When evaluating the credibility of an individual's statements, the adjudicator must consider the entire case record and give specific reasons for the weight given to the individual's statements.

SSR 96-7p. In addition, SSR 96-4p provides that:

> Once the existence of a medically determinable physical or mental impairment(s) that could reasonably be expected to produce the pain or other symptoms alleged has been established on the basis of medical signs and laboratory findings, allegations about the intensity and persistence of the symptoms must be considered with the objective medical abnormalities, and all other evidence in the case record, in evaluating the functionally limiting effects of the impairment(s).

SSR 96-4p.

### 3.   Legal Benchmarks for Assessing Medical Opinions

The legal standards governing our evaluation of medical opinion evidence are familiar ones. The Social Security Regulations identify three general categories of medical sources – treating, non-treating,[13] and non-examining.[14] In Morales v. Apfel,

---

[13]A non-treating source is a physician or other acceptable medical source who has examined the claimant, but does not have an ongoing treatment relationship. See 20 C.F.R. §416.902.

[14]A non-examining source is a non-treating physician or other acceptable medical source who has not examined the claimant, but provided a medical or other opinion. This includes opinions rendered by state agency medical or psychological

225 F.3d 310  (3d Cir. 2000), the Court of Appeals for the Third Circuit set forth the

standard for evaluating the opinion of a treating physician stating that:

> A cardinal principle guiding disability eligibility determinations is that the ALJ accord treating physicians' reports great weight, especially "when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time." Plummer [v. Apfel, 186 F.3d 422, 429 (3d Cir.1999)] (quoting Rocco v. Heckler, 826 F.2d 1348, 1350 (3d Cir.1987)); see also Adorno v. Shalala, 40 F.3d 43, 47 (3d Cir.1994); Jones, 954 F.2d at 128; Allen v. Bowen, 881 F.2d 37, 40-41 (3d Cir.1989); Frankenfield v. Bowen, 861 F.2d 405, 408 (3d Cir.1988); Brewster, 786 F.2d at 585.  Where, as here, the opinion of a treating physician conflicts with that of a non-treating, non-examining physician, the ALJ may choose whom to credit but "cannot reject evidence for no reason or for the wrong reason."  Plummer, 186 F.3d at 429 (citing Mason v. Shalala, 994 F.2d 1058, 1066 (3d Cir.1993)).  The ALJ must consider the medical findings that support a treating physician's opinion that the claimant is disabled.  See Adorno, 40 F.3d at 48.  In choosing to reject the treating physician's assessment, an ALJ may not make "speculative inferences from medical reports" and may reject "a treating physician's opinion outright only on the basis of contradictory medical evidence" and not due to his or her own credibility judgments, speculation or lay opinion. Plummer, 186 F.3d at 429; Frankenfield v. Bowen, 861 F.2d 405, 408 (3d Cir.1988); Kent, 710 F.2d at 115.

Furthermore, when assessing competing views of treating and non-treating

physicians, the ALJ and this Court are cautioned that:

> [A]n ALJ is not free to employ her own expertise against that of a physician who presents competent medical evidence. Ferguson, 765 F.2d at 37 (1985).  When a conflict in the evidence exists, the ALJ may

_____

consultants.  See 20 C.F.R. §416.902.

16

choose whom to credit but "cannot reject evidence for no reason or for the wrong reason." Mason v. Shalala, 994 F.2d 1058, 1066 (3d Cir.1993). The ALJ must consider all the evidence and give some reason for discounting the evidence she rejects. See Stewart v. Secretary of H.E.W., 714 F.2d 287, 290 (3d Cir.1983). Treating physicians' reports should be accorded great weight, especially "when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time." Rocco v. Heckler, 826 F.2d 1348, 1350 (3d Cir.1987); 20 C.F.R. § 404.1527(d)(2) (providing for controlling weight where treating physician opinion is well-supported by medical evidence and not inconsistent with other substantial evidence in the record.) An ALJ may reject a treating physician's opinion outright only on the basis of contradictory medical evidence, but may afford a treating physician's opinion more or less weight depending upon the extent to which supporting explanations are provided. Newhouse v. Heckler, 753 F.2d 283, 286 (3d Cir.1985).

Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir.1999).

Opinions by non-treating, and non-examining sources are generally accorded less weight than opinions rendered by treating sources. 20 C.F.R. §416.927(c)(2). Further, more weight is given to the opinion of a source who has examined the claimant, than to an opinion by a non-examining source. 20 C.F.R. §416.927(c)(1); see also Morales, 225 F.3d at 320 (citing Brewster v. Heckler, 786 F.2d 581, 585 (3d Cir. 1986)). Moreover, the Social Security Regulations regarding medical evidence direct that the weight given to medical opinions by non-treating sources depends, in large part, upon the degree to which they are supported by medical signs and laboratory findings, and whether they are accompanied by a detailed explanation. 20

17

C.F.R. §416.927.

Given this recognition of the varying weight that could potentially attach to the professional judgment of physicians or other acceptable medical sources under the Social Security Regulations, it is axiomatic that an ALJ provide an adequate explanation for the assignment of greater weight to one opinion over others. See Cotter, 642 F.2d at 704 (holding an ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests."). Moreover, when an ALJ fails to adequately explain why a physician's medical assessment has been discounted, a remand for further development of the factual record is proper. See e.g., Burnett, 220 F.3d at 119 (failure to adequately discuss competing medical evidence compels remand of ALJ decision). Thus, as one court has aptly observed:

> "An ALJ may not reject a physician's findings unless he first weighs them against other relevant evidence and explains why certain evidence has been accepted and why other evidence has been rejected." Mason v. Shalala, 994 F.2d 1058, 1067 (3d Cir.1993) (internal quotation marks, citations and indication of alteration omitted). Where the findings are those of a treating physician, the Third Circuit has "long accepted" the proposition that those findings "must [be] give[n] greater weight ... than ... the findings of a physician who has examined the claimant only once or not at all." Id. (citations omitted)  An ALJ may reject a treating physician's opinion on the basis of contradictory medical evidence, see Frankenfield v. Bowen, 861 F.2d 405, 408 (3d Cir.1988), and may afford a medical opinion more or less weight depending upon the extent to which supporting explanations are provided, see Mason, 994 F.2d at 1065 ("[f]orm reports in which a physician's obligation is only to check a box or fill in a blank are weak evidence at best"), and whether the

reporting doctor is a specialist, see Id. at 1067.  An ALJ may not, however, reject medical determinations by substituting his own medical judgments.  See Frankenfield, 861 F.2d at 408.

Terwilliger v. Chater, 945 F.Supp. 836, 842-43 (E.D.Pa.1996).

### 4.      Judicial Review of ALJ Determinations–Standard of Review

Once the ALJ has made a disability determination, it is then the responsibility of this Court to independently review that finding.  In undertaking this task, this Court applies a specific, well-settled and carefully articulated standard of review.  An action under 42 U.S.C. §1383(c)(3)  to review the decision of the Commissioner of Social Security denying Plaintiff's claim for disability benefits is subject to judicial review as provided in 42 U.S.C. §405(g).  Congress has specifically provided that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive[.]" 42 U.S.C. § 405(g).

The "substantial evidence" standard of review prescribed by statute is a deferential standard of review.  Jones v. Barnhart, 364 F.3d 501, 503 (3d Cir. 2004).  When reviewing the denial of disability benefits, we must simply determine whether the denial is supported by substantial evidence.  Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir. 1988); see also Johnson v. Commissioner of Social Security, 529 F.3d 198, 200 (3d Cir. 2008).  Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might

accept as adequate to support a conclusion." Johnson, 529 F.3d at 200 (quoting Hartranft, 181 F.3d at 360); see also Pierce v. Underwood, 487 U.S. 552 (1988). It is less than a preponderance of the evidence but more than a mere scintilla of proof. Richardson v. Perales, 402 U.S. 389, 401 (1971). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Plummer, 186 F.3d at 427 (quoting Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir. 1995).

A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence. Mason, 994 F.2d at 1064. However, in an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the decision] from being supported by substantial evidence." Consolo v. Federal Maritime Comm'n, 383 U.S. 607, 620 (1966). Furthermore, in determining if the ALJ's decision is supported by substantial evidence the court may not parse the record but rather must scrutinize the record as a whole. Smith v. Califano, 637 F.2d 968, 970 (3d Cir. 1981).

**B.     The ALJ's Decision is Not Supported by Substantial Evidence**

The Plaintiff objects to the ALJ's credibility determination for two reasons. First, the Plaintiff asserts that the ALJ's credibility assessment is unsupported by substantial evidence in the record.   Second, the Plaintiff objects to the ALJ's conclusion that her credibility is undermined by her failure to routinely take her prescribed sleep aid, and due to her purported infrequent visits to her pain management specialist.

The Plaintiff's first objection to the ALJ's credibility assessment is based on the following language from the decision:

> In this case, the claimant's case in establishing disability is directly dependent on the element of pain which is of an intractable nature. Pain is subjective and difficult to evaluate, both quantitatively or qualitatively.   Nevertheless,  most  organic  diseases  produce manifestations other than pain and it is possible to evaluate the underlying processes and degree of resultant impairment by considering all of the symptoms.  Generally, when an individual has suffered pain over an extended period, there will be observable signs such as a significant loss of weight, an altered gait or *limitation of motion*, local morbid changes, or poor coloring or station.  In the present case, the claimant has complained of pain over an extended period of time. *None of the above signs of chronic pain are evident*.  While not conclusory by itself, this factor contributes to the determination that the claimant is not disabled as a result of pain.

(Tr. 16)(*emphasis added*).

We note this, apparently boilerplate, language has appeared on occasion in prior social security cases, and has been rejected by this Court as "clearly erroneous" where the absence of the ALJ's "observable signs of pain" were, as here, unsupported by substantial evidence in the record.  See Kostelnick v. Astrue, No. 3:12-CV-901, 2013 WL 6448859 *7(M.D.Pa.  Dec. 9, 2013)(finding that the ALJ's assertion there was "no objective medical evidence supporting the extent of her alleged pain" was clearly erroneous where the court's review of treatment  records from a treating physician revealed a decrease in the range of motion in her lumbar spine documented in the administrative record on 23 occasions); Kinney v. Astrue, No. 3:11-CV-1848, 2013 WL 877164 *2-3 (M.D.Pa. Mar. 8, 2013)(observing that the ALJ issued inappropriate boilerplate language, and finding that the medical records revealed that the Plaintiff's "examining physicians noted an altered gait, local morbid changes (muscle atrophy), loss of weight and limitation of range of motion"); see also Ennis v. Astrue, No. 4:10-CV-2574, 2013 WL 74375 *7-8 (M.D.Pa. Jan. 4, 2013); Hughs v. Astrue, 4:10-CV-2574, 2012 WL 833039 *12-13(M.D.Pa. Mar. 12, 2012); Daniels v. Astrue, No. 4:08-CV-1676, 2009 WL 1011587 *17 (M.D.Pa. Apr. 15, 2009).

Here, we find that the use of this erroneous, boilerplate standard of review cannot be discounted as harmless error since in this case the Plaintiff's treating physician documented a decrease in the Plaintiff's range of motion during three

22

examinations during the relevant period.  (Tr. 141, 180, 193).  In addition, the consultative examining physician, Dr. Patel noted a decrease in the Plaintiff's range of motion.  (See Tr. 201).

Furthermore, the Social Security Regulations direct the ALJ to consider several factors in assessing a Plaintiff's subjective complaints of pain.[15]   20 C.F.R. §416.929(c)(3); see also SSR 96-7p.  Here, the ALJ's consideration of these factors is fatally flawed.  The ALJ discounted the Plaintiff's subjective complaints of pain, and her testimony that her sleep was interrupted by pain based on the ALJ's observation that the Plaintiff "only saw Dr. Janerich a couple times a year" and a treatment note indicating the Plaintiff rarely used her prescribed sleep aid.  (Tr. 15). While this is clearly evidence that may, and should, be considered in evaluating a Plaintiff's subjective complaints of pain, SSR 96-7p provides that "the adjudicator must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide, or other information

---

[15]The factors are: (i) extent of daily activities; (ii) the location, duration, frequency, and intensity of pain or other symptoms; (iii) precipitating and aggravating factors; (iv) the type, dosage, effectiveness, and side effects of any medication; (v) treatment other than medication for the symptoms; (vi) measures used to relieve pain or other symptoms; (vii) other factors concerning functional limitations and restrictions due to pain or other symptoms.  20 C.F.R. §416.929(c)(3).

in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment." SSR 96-7p. Where such evidence is absent from the record, "[t]he adjudicator may need to recontact the individual or question the individual at the administrative proceeding in order to determine whether there are good reasons" for such behavior." Id. Here, the ALJ viewed the Plaintiff's treatment history as an indication that she had "fairly good pain control" and did not solicit additional testimony on this matter at the hearing. (Tr. 16).

As discussed above, the ALJ's decision must also be accompanied by "a clear and satisfactory explication of the basis on which it rests." Cotter, 642 F.2d at 704. The Court of Appeals has pointed out, absent such explanation, the court is "handicapped" because it is "impossible to determine whether the ALJ's finding ... is supported by substantial evidence." Fargnoli v. Halter, 247 F.3d 34, 40 (3d Cir. 2001). Accordingly, for the reasons articulated above, we find that the ALJ failed to provide sufficient explanation to allow this Court to conduct a meaningful review of her analysis of the Plaintiff's subjective complaints of pain.

Additionally, we find that the lack of specificity in the ALJ's assessment is compounded by two material misstatements of fact. First, the ALJ's evaluation of the Plaintiff's pain medication dosage as a factor in assessing her credibility is colored by an inaccurate representation of the actual drug dosage Goss relies upon to control

her chronic pain.  In her decision, the ALJ noted that the Plaintiff did tell [Dr. Janerich] that on her worst day she takes five pills of Percocet, but she was averaging *two pills a month* until March 2010."  (Tr. 15)(emphasis added).  The Plaintiff's medical records actually state that she "usually does not use more than *two [pills] a day*." (Tr. 180)(emphasis added).  This error, which conflates daily and monthly pain medication use, is highly material when examined in the context of evaluating the credibility of the Plaintiff's reported symptoms of pain it takes on much greater significance.  An individual whose chronic pain is controlled by a mere two pills per month is undoubtedly suffering from a much smaller degree of pain than an individual who requires the same medication upwards of two times per day.  Second, in rejecting the handling, fingering, and feeling limitations from Dr. Parmelee's RFC assessment as unsupported by the record, the ALJ noted that Dr. Parmelee observed that the Plaintiff had "[d]iminished sensation in the *left* hand, but no reference to parathesia[sic] in the extremity, range of motion in the hands, elbows, and shoulders is only slightly reduced." (Tr. 16)(emphasis added).  The Plaintiff alleges impairment only to her *right* side.  ( See Tr. 38 ).  Though, these errors may be the result of some typographical error, in this context they only further reinforce the recommendation that further review of this case by the ALJ is warranted.  Indeed, regardless of the

source of this error, it is undeniably an error on a basic, fundamental factual issue and undermines confidence in the outcome reached in this case.

Therefore,  because the ALJ's disability determination is premised upon a credibility determination which lacks sufficient explanation, and contains multiple material factual misstatements, we are compelled to recommend that this case be remanded to the Commissioner for further consideration.

## III.    **Recommendation**

Accordingly, for the foregoing reasons, IT IS RECOMMENDED that the Plaintiff's complaint be REMANDED for further consideration of the medical evidence, and the Plaintiff's subjective testimony.

The parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof.  Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections.  The briefing requirements set forth in Local Rule 72.2 shall apply.  A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge.  The judge, however,

need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 14th day of February, 2014.

***<u>S/Martin C. Carlson</u>***

Martin C. Carlson

United States Magistrate Judge